HUMPHREYS, J.,
with whom BUMGARDNER, J., joins, dissenting.
Because I would find the evidence presented below sufficient to establish Norman’s status as an habitual offender, I dissent from the majority’s analysis and conclusion.
As the majority notes, Code § 46.2-357(A) defines the felony offense of driving after being declared an habitual offender. “In pertinent part, Code § 46.2-357(A) states that ‘[i]t shall be unlawful for any person to drive any motor vehicle ... on the highways of the Commonwealth while the revocation of the person’s driving privilege remains in effect.’ ” Varga v. Commonwealth, 260 Va. 547, 550, 536 S.E.2d 711, 713 (2000) (quoting Code § 46.2-357(A)).
Code § 46.2-360(1) permits a court to remove an individual’s status as an habitual offender by permitting the individual so declared, under certain circumstances, to petition the court for restoration of his or her driving privilege. Code § 46.2-360(1) states as follows, in relevant part:
Any person who has been found to be an habitual offender ... may petition the court in which he was found to be an habitual offender, or the circuit court in the political subdivision in which he then resides to:
1. Restore his privilege to drive a motor vehicle in the Commonwealth, provided that five years have elapsed from the date of the final order of a court entered under this article, or if no such order was entered then the notice of *640 the determination by the Commissioner. On such petition, and for good cause shown, the court may, in its discretion, restore to the person the privilege to drive a motor vehicle in the Commonwealth on whatever conditions the court may prescribe subject to other provisions of law relating to the issuance of driver’s licenses, if the court is satisfied from the evidence presented that: (i) at the time of the previous convictions, the petitioner was addicted to or psychologically dependent on the use of alcohol or other drugs; (ii) at the time of the hearing on the petition, he is no longer addicted to or psychologically dependent on the use of alcohol or such other drug; and (iii) the person does not constitute a threat to the safety and welfare of himself or others with regard to the driving of a motor vehicle.... The court may, in lieu of restoring the person’s privilege to drive, authorize the issuance of a restricted license for a period not to exceed five years in accordance with the provisions of subsection E of § 18.2-271.1. The local Virginia Alcohol Safety Action Program shall during the term of the restricted license monitor the person’s compliance with the terms of the restrictions imposed by the court. Any violation of the restrictions shall be reported to the court, and the court may then modify the restrictions or revoke the license.
(Emphases added).
The majority recognizes that a “conditional restoration” is available pursuant to the terms of the statute. Nevertheless, the majority declares that this distinction is one without a difference. In so holding, the majority ignores the term “conditions,” as used in the statute, by finding that any “restoration” of an individual’s privilege to drive necessarily operates to remove the individual’s status as an habitual offender and fully “restores” their privilege to drive, despite any statutorily permitted conditions imposed by the trial court.
I would not so lightly cast aside the legislature’s explicit use of the term “conditions.” See Shelor Motor Co. v. Miller, 261 Va. 473, 479, 544 S.E.2d 345, 348 (2001) (“When the legislature has used words of a plain and definite meaning, courts cannot *641 accord those words a meaning that amounts to holding that the legislature did not mean what it actually expressed.”); see also Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998) (noting the “settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary”). That term, as defined in Black’s Law Dictionary, presupposes:
A future and uncertain event on which the existence or extent of an obligation or liability depends; an uncertain act or event that triggers or negates a duty to render a promised performance.
Black’s Law Dictionary 288 (7th ed. 1999).
Thus, although the trial court, in December of 1999, may have “restored” Norman’s privilege to drive, it did so only conditionally, as the majority recognizes is permitted pursuant to Code § 46.2-360(1). Specifically, the trial court’s order required Norman to “present himself and [the] Order to the Department of Motor Vehicles for such administrative proceedings and payment of fees and costs as may be required,” to present himself “to Dan River ASAP for monitoring and supervision for twelve (12) months from the date of [the] Order,” and to refrain from possessing or using “alcohol, alcoholic beverages or drugs.” The order further provided that if Norman were to “incur any alcohol or drug related offense during the period of supervision as set forth herein, the Court may in its discretion issue process to [Norman] to show cause why his privilege to drive should not be suspended permanently.”[6] By restoring Norman’s privilege to drive, contingent upon his performance of these express conditions (whether positive or negative), the trial court did not fully restore Norman’s driving privilege as the majority declares. Instead, the trial court expressly retained the authority to revoke the privilege if Norman failed to comply with the *642 conditions set forth in the order granting the conditional restoration. Such a retention of authority is clearly permitted by the statute and simply cannot be construed as a removal of Norman’s status as an habitual offender, much less a mandate declaring the order originally placing Norman in that status completely null and void. See Varga, 260 Va. at 551, 536 S.E.2d at 714 (“Reading the habitual offender statutes in pari materia, it is clear that once a person is declared an habitual offender by order of a trial court, he retains that status and loses his driving privilege for so long as the order is effective. Thus, unless the trial court specifically limits the duration of the effect of the order ... the habitual offender status of the person so declared continues until that person successfully petitions the court to have that status removed and his privilege to drive restored under one of the code sections permitting such petitions.”).
Further, the majority’s implicit contention that the only way a trial court may retain an individual’s status as an habitual offender is to issue a restricted license, belies the plain language of the statute. As the majority states, under Code § 46.2-360(1), the trial court may restore an individual’s privilege to drive, either with or without conditions, or it may issue the individual a restricted license. A restricted license, issued “in accordance with the provisions of subsection E of § 18.2-271.1,” permits an individual to drive only for certain specified purposes. See Code §§ 46.2-360(1) and 18.2-271.1. However, a restored license with conditions, restores an individual’s privilege to drive for any lawful purpose, but — by its very terms — makes the full restoration of that individual’s driving privilege contingent upon the court ordered conditions. As stated above, the record demonstrates that this is what has occurred in the case at bar. I believe that such a scenario is clearly permitted by the plain language of the statute.
Moreover, Norman was aware that he retained habitual offender status when the circuit court found that he violated the provisions of the December 20, 1999 order and, by its order of May 4, 2001, revoked his driving privilege, granting him instead restricted driving privilege. Indeed, when he *643 signed the resulting Restricted Driver’s License Order, on May 7, 2001, Norman acknowledged that he was granted the restricted license “after having been adjudicated/determined to be an habitual offender.” Yet, Norman never appealed and/or took issue with the clear import of these orders until his trial on the charge at issue, which took place in March of 2002 — nearly nine months later. See Morgan v. Commonwealth, 28 Va.App. 645, 507 S.E.2d 665 (1998) (holding, in the context of an habitual offender adjudication, that where a defendant has knowledge of an underlying order, never appeals the order, and subsequently violates the order, he cannot attack the underlying order in a subsequent proceeding).
In light of the above, I would hold that the trial court properly found the evidence sufficient to establish Norman’s status as an habitual offender at the time of the offense, and I would, thus, affirm the judgment of the trial court.

. I agree with the majority’s conclusion that because the issue is not before us, we need not here consider the trial court’s authority to “permanently” suspend Norman’s privilege to drive.